# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL STEPHON PARKER,** | ) | Civil Action No. 7:11-cv-00129 |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CHRISTINA AMOS, et al.,** | ) | By:   Hon. Michael F. Urbanski |
| **Defendants.** | ) | United States District Judge |

Michael Stephon Parker, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants two staffers of the Central Virginia Regional Jail ("Jail"): Major Frank Dyer and Christina Amos, the Jail's Head Nurse. The defendants filed a motion to dismiss, and plaintiff responded, making the matter ripe for disposition. After reviewing plaintiff's submissions, the court grants the motion to dismiss.

## I.

Plaintiff alleges the following facts in his Amended Complaint. Plaintiff alleges that someone took his blood pressure medication away from him upon his arrival at the Jail and that he was without that medication for three or four days while waiting to receive medication from the Jail's pharmacy. During those three or four days, he "experienced elevated pressure, headaches, and night sweats."

Even after receiving the medication, plaintiff's blood pressure was still elevated. Plaintiff was "put on daily checks" and "would wake up with headaches and night sweats, so [he] knew that [his] pressure was up." (Am. Compl. (no. 11) 2.) These symptoms occurred after midnight, but no medical personnel were available to plaintiff after 10:00 p.m. Plaintiff filed a request to the medical department, which was referred to Major Dyer, because he felt the Jail

should have medical staff available twenty-four hours a day. Plaintiff alleges that he "felt in danger of irreparable harm" due to a possibility of experiencing strokes, heart attacks, or death. Plaintiff concludes that the lack of twenty-four hour medical services constitutes deliberate indifference.

Plaintiff alleges that on December 6, 2010, he filed a complaint with the medical department about how the Jail charged both him and the Albemarle Charlottesville Regional Jail[1] for his hypertension medication. Defendant Amos responded, stating "that regardless if it is [c]hronic [c]are or not that [he] would be charged, and if [he didn't] wish to continue taking medication due to being charged [he] needed to sign a refusal releasing [the Jail] from liability." (Id. 3.) Plaintiff did not sign a refusal form, but medical staff never renewed his medication when it finished, which exacerbated plaintiff's hypertension and nephritic syndrome. Because his medicine was interrupted, plaintiff complains that he "was exposed to potential health[-]risks, not limited to irreparable damage of [his] kidneys, strokes, heart attacks, [p]ain, and[/]or death." (Id. 4.)

Plaintiff weighed 212 pounds when he arrived at the Jail, and medical staff ordered him a low-sodium diet because of his hypertension. After forty-five days at the Jail, plaintiff lost "a drastic amount of weight" and asked the Kitchen Dietician whether he received the correct foods. Plaintiff alleges that the Kitchen Supervisor admitted to serving him incorrect foods and portions and referred his weight problem to the medical department. Plaintiff alleges that he filed a medical request about his low-sodium diet and about receiving three-bean salads with vinegar, processed turkey loaf, and sodium-laced peanut butter. Plaintiff alleges that Amos was supposed to meet with the Kitchen Supervisor about his diet, but the food remained the same.

---

[1] Plaintiff explains that he was on a "courtesy hold" to the Jail from the Albemarle Charlottesville Regional Jail.

Based on his experiences with hypertension for twenty-one years, plaintiff should not receive "processed additives, preservatives, and fried and breaded foods" but should receive baked meals with fresh fruit, vegetables, turkey, and fish. Plaintiff believes that the incorrect servings caused his "drastic" weight loss and may contribute to Chronic Kidney Disease, weight loss, and elevated blood pressure.[2] Plaintiff requests as relief $200,000 in damages and changes to the Jail's medical procedures.

II.

The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions . . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

---

[2] Plaintiff attached to his complaint a blood pressure log that shows his blood pressure generally decreased between January and April 2011.

However, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although the court liberally construes pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of the complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment for insufficient medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official

in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). However, the prisoner must demonstrate that a defendant's action was "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. However, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Id. at 105-06. See Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986); Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment also does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83.

To bring an insufficient medical treatment claim against non-medical prison personnel, plaintiff must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to the prison physician's misconduct where even a lay person would understand that the medical care provider is being deliberately indifferent. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id.

Plaintiff fails to allege any facts establishing a defendant's deliberate indifference to a serious medical need. Plaintiff does not alleges a factual basis for holding a defendant responsible because the Jail does not have twenty-four hour medical staff, someone took away his medication for a few days, or the Kitchen Dietician or Kitchen Supervisor miscalculated his food servings. Liability under 42 U.S.C. § 1983 cannot be imposed on a person unless the person directly participated in the alleged violation of a plaintiff's constitutional rights. See Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142 (4th Cir. 1982) (no basis exists under 42 U.S.C. § 1983 for vicarious liability). Furthermore, plaintiff acknowledges that staff monitored his blood pressure frequently, if not daily, and does not allege that any emergency treatment was required during the nighttime hours when no medical staff was present. The Constitution does not require the Jail to have medical staff on duty twenty-four hours a day. See Bennett v. Reed, 534 F. Supp. 83, 87 (E.D.N.C. 1981) (absence of a qualified nurse on twenty-four hour duty did not violate prisoner's constitutional rights), aff'd, 676 F.2d 690 (4th Cir. 1982); Williams v. Limetone Cnty., 198 F. App'x 893 (11th Cir. 2006) (absence of twenty-four hour medical staff on duty did not violate the prisoner's constitutional rights).

As for plaintiff's claim about being charged for medication, plaintiff does not allege that he was denied medication because he was unable to pay for it.[3] An inmate has "no constitutional right to free medical care," and charging inmates medical co-payments is permissible. See Boblett v. Angelone, 942 F. Supp. 251, 254 (W.D. Va. 1996) (plaintiff's claim that "as a result of the policy regarding medical copayments, he is often forced to choose between necessary toiletries and adequate medical care" failed to state a claim for violation of his constitutional

---

[3] Plaintiff's account information reflects a $3.00 prescription charge on December 6, 2010 (logged December 22, 2010), and $3.00 was subsequently credited to plaintiff's account on January 4, 2011. (no. 11-1.) That account also shows that plaintiff chose to make other purchases, including from the commissary, from his funded account.

rights), aff'd, 121 F.3d 697 (4th Cir. 1997). See also Reynolds v. Wagner, 128 F.3d 166, 174 (3rd Cir. 1997) (rejecting plaintiffs' argument that charging inmates with an ability to pay for medical care is unconstitutional); Hutchinson v. Belt, 957 F. Supp. 97, 100 (W.D. La. 1996) (finding that if an inmate is given access to medical services but chooses to apply his resources elsewhere, it is the inmate, and not the prison official, who is indifferent to serious medical needs).

Plaintiff fails to link a defendant's culpability to the food served by the Kitchen Dietician or Kitchen Supervisor. Plaintiff does not even allege how much weight he lost or any injury from the weight loss, especially since he had weighed 212 pounds and had hypertension; instead, his blood pressure log establishes that his blood pressure generally improved. Plaintiff's speculation about possibilities of harm does not by itself state a claim. See Reed v. Pearson, 1991 WL 274259, *8, 1991 U.S. Dist. LEXIS 18319, *23 (N.D. Ind. 1991) ("prescription for a low-salt and low-cholesterol diet did not specify what foods should be made available for [inmate's] consumption" and failure to provide such diet immediately or exclusively did not constitute a constitutional violation, especially where the inmate's health has not been impaired to any significant degree), report and recommendation adopted, and aff'd, 976 F.2d 735 (7th Cir. 1992).

Moreover, plaintiff fails to establish any injury, from either the absence of twenty-four hour medical staff or from being without medication for a few days. See Gunter v. Saline Cnty. Det. Facility, 2010 WL 1052868, *3, 2010 U.S. Dist. LEXIS 28039, *6-7 (E.D. Ark. Feb. 24, 2010) (alleged headaches and chest pain from high blood pressure did not constitute actual injury as required for a constitutional claim); Evans v. Bonner, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (with respect to inmate with HIV who contended that he had "aches, pains and joint

problems . . . caused by the untimely medication," "absent some concrete physical harm, a delay in providing medication is not an 'injury' of the type contemplated by the [§ 1983] statute").

Plaintiff argues that the defendants violated the Jail's policies as described in the inmate handbook. However, a claim that Jail personnel have not followed the Jail's policies or procedures also does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Plaintiff accuses the defendants of medical malpractice, but the court to declines to construct a claim from plaintiff's singular use of the label to remedy his failure to develop an actual claim. Regardless, Dryer is not medical staff, plaintiff does not explain how Dryer interfered with the receipt of necessary medical services, and plaintiff failed to obtain expert certification of his claims, which question quintessential professional medical judgment and are beyond a layman's medical knowledge.[4] See VA. CODE § 8.01-20.1. Cf. Parker v. United States, 475 F. Supp. 2d 594, 596 (E.D. Va. 2007) (stating that a federal tort claim of medical malpractice claim is subject to the VMMA expert certification of merit requirement). Furthermore, plaintiff does not have a constitutional right to access the Jail's grievance system. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

---

[4] Plaintiff questions the propriety of temporarily interrupting his hypertension medicine and the subsequent effect on his hypertension, organs, and other medical conditions.

In conclusion, plaintiff fails to establish any deprivation of a constitutional right by any defendant. To the extent he sues them in their individual capacities for damages, they are entitled to qualified immunity. See Pearson v. Callahan, 129 S. Ct. 808 (2009) (stating to overcome qualified immunity a plaintiff bears the burden to show that a defendant's conduct violated a constitutional right). To the extent he sues them in their official capacities for damages, neither a state nor its officials acting in their official capacities are persons for purposes of § 1983 damages actions. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71, n.10 (1989).

### III.

For the foregoing reasons, the court grants the defendants' motion to dismiss and dismisses plaintiff's complaint.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

Entered: August 15, 2011

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge